Redacted
V1

ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
*Bid Protest*
[FILED UNDER SEAL]

FILED
JUN 30 2008
U.S. COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ASHBRITT, INC.<br>480 South Andrews Avenue, Suite 103<br>Pompano Beach, Florida 33069<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES<br>SERVE:<br>Attorney in Charge of Litigation<br>U.S. Department of Justice<br>Civil Division<br>Commercial Litigation Branch<br>1100 L St., N.W., 8th Floor<br>Washington, D.C. 20530<br><br>Defendant. | No. 08-473 C |

**COMPLAINT FOR DECLARATORY JUDGMENT AND A PERMANENT INJUNCTION**

COMES NOW, AshBritt, Inc. ("AshBritt"), through its undersigned attorneys, and files this Complaint for Declaratory Judgment and a Permanent Injunction.

## INTRODUCTION

1. This action is a bid protest in connection with Solicitation No. W912P8-07-R-0101, issued by the United States Army Corps of Engineers (the "Corps") on June 23, 2007 to award a number of Advance Contracting Initiative Single Award Task Order Contracts for Debris Management Services Within the United States and its Territories (the "Solicitation" or the "ACI Contracts"). The ACI Contracts put debris management contractors in place for particular regions of the country in advance of a natural or man-made disaster so that the contractors can

mobilize immediately upon the occurrence of a disaster event. AshBritt contends that the Corps' evaluation and award process was fatally flawed in a number of respects. However, because the previous ACI contracts lapsed by their terms on April 30, 2008, and in recognition of the vital importance of the ACI Contracts to the health, safety, and security of the United States, particularly now that the 2008 hurricane season is underway, AshBritt is *not* seeking a Temporary Restraining Order or Preliminary Injunction to halt all activity under the existing contracts in case a disaster should strike before this action is concluded. Rather, AshBritt seeks only the declaratory and permanent injunctive relief set forth herein. If the court rules in AshBritt's favor, the Corps could terminate the existing contracts for the convenience of the government.

## JURISDICTION AND VENUE

2. Jurisdiction is based upon 28 U.S.C. §§ 1491(b)(1) and (b)(2).

## THE PARTIES

3. Plaintiff AshBritt, Inc. ("AshBritt") is a corporation organized under the laws of the State of Florida. AshBritt's principal place of business is at 480 South Andrews Avenue, Suite 103, Pompano Beach, Florida, 33069. AshBritt is engaged in the business of providing disaster response and recovery services, among others, to the United States Government, to state and municipal governments, and to other customers.

4. AshBritt is an interested party as it is an actual offeror whose direct economic interest has been affected by the failure to award to AshBritt the contracts protested. FAR § 33.1. AshBritt was also an "incumbent" contractor performing the same services for the U.S. Army Corps of Engineers under two previous contracts.

5. Defendant, the United States, acting through the Corps, conducted the procurement at issue in this case.

## FACTUAL BACKGROUND

6. On June 23, 2007, the Corps issued the Solicitation as a Request for Proposals ("RFP") for debris removal and management services for each of ten geographic regions listed in Section H.1 of the Solicitation. (RFP at 25). The Solicitation also provided for the award of a "reach-back" contract for each region, to be activated for large disaster events requiring a second debris contractor in a region. Offerors were permitted to bid for any or all regions for which they were eligible, as the primary contractor, the reach-back contractor, or both. (RFP at 25, 109). Each awarded contract is an Indefinite Delivery/Indefinite Quantity ("ID/IQ") contract for a single base year and four one-year option periods. (RFP at 25). Under Amendment 0001, each regional contract has a Not-to-Exceed ("NTE") capacity of $250 million, with a minimum guarantee of $10,000 over the life of the contract. (RFP Amendment 0001 at 4).

7. AshBritt was among [redacted] offerors that submitted timely proposals in response to the Solicitation. AshBritt was among [redacted] offerors placed in the competitive range. Discussions were held between AshBritt and the Corps on August 31, 2007. At the request of the Corps, AshBritt submitted its Final Proposal Revisions ("FPR") on September 10, 2007.

8. On January 27, 2008, AshBritt was notified prior to contract award that it had not been selected for award. The Corps' unusual decision to single out one offeror in the competitive range for pre-award notification that it would not be selected had the effect of depriving AshBritt of an opportunity to receive a post-award debriefing and obtain information concerning the winning bids.

9. On February 4, 2008, following a pre-award debriefing, AshBritt protested the selection decision at the Government Accountability Office ("GAO" Protest B-310442.2) based on a number of defects in the Corps' evaluation process, as well as on the procedural ground of the Corps' unfair early notification to AshBritt.

10. Shortly thereafter, on February 22, 2008, counsel for the Corps asked the GAO to withdraw AshBritt's protest as academic because the Government had "identified deficiencies in its evaluation of proposals" and therefore intended to take corrective action. (Agency Notification of Intent to Take Corrective Action, 14 February 2008). Accordingly, on March 5, 2008, the GAO dismissed AshBritt's first protest as academic.

11. On April 11, 2008, the Corps notified AshBritt that it had been selected for award of Contract Number W912P8-07-D-0053 as the primary contractor for Region 2a (Georgia, North Carolina and South Carolina) and as the reach back contractor for Region 3 (Mississippi and Louisiana).

12. AshBritt was pleased to have received these awards, but was concerned that other offerors had received far more than two of the twenty potential prime and reach back contracts awarded.[1] Consequently, AshBritt timely requested a debriefing which was held on April 30, 2008, to learn why AshBritt was not selected for more contracts.

13. During the debriefing, the contracting officer revealed the nature of the Government's corrective action as a result of AshBritt's first protest. The Corps had failed to include the option year pricing in its calculation of each offeror's price proposal for each region. Therefore, the

[1] For example, other offerors received as many as four primary contracts and six reach back contracts.

Corps' sole "corrective action" was merely to perform an additional mathematic computation based on the same flawed evaluation that prompted AshBritt's initial protest. The Corps took no corrective action to address the multiple flaws identified in AshBritt's protest. AshBritt thus was compelled to re-assert its protest grounds a second time.

14. AshBritt re-filed its protest at the GAO on May 9, 2008 (GAO Bid Protest No. B-310442.3). Mindful of the fact that hurricane season was to begin officially on June 1, 2008 and that because the previous ACI contracts had expired by their terms on April 30, 2008, AshBritt elected to waive its right to an automatic stay under the Competition in Contracting Act so that the nation would be adequately prepared should any natural or man-made disasters occur during the pendancy of the protest. Accordingly, AshBritt intentionally filed its second protest within ten days of its April 30, 2008 post-award debriefing, but beyond the five day window following the debriefing which would have been necessary to trigger the automatic stay.

15. In its second protest, AshBritt requested that the Corps produce a variety of documents relevant to the procurement, including copies of proposals and final proposal revisions submitted by all of the other offerors in the competitive range. The Corps refused to provide these documents and GAO declined to compel their production.

16. When the Corps submitted its Agency Report in response to AshBritt's second protest, a number of key documents were not included, which AshBritt deemed crucial to a full understanding of the history of this solicitation and the flaws in the evaluation process. AshBritt believes that the GAO's failure to require the Government to produce a full and complete record was erroneous, but AshBritt had no recourse at the GAO. Further, with respect to one of AshBritt's protest grounds, there is adverse GAO precedent that AshBritt maintains is wrongly

decided and should not be adopted by this Court. For these reasons, AshBritt elected to dismiss its protest at GAO and now brings this action in its stead.

**COUNT I**

**(Failure to Conduct Meaningful Discussions)**

17. AshBritt incorporates paragraphs 1 through 16 as if fully stated herein.

18. FAR Sections 15.306(d) and (e) require that in a negotiated procurement such as this, any discussions conducted by the agency must be "meaningful."

19. The Corps conducted discussions with offerors in the competitive range on August 31, 2008.

20. In a number of respects, these discussions were not meaningful and were inadequate or misleading. AshBritt was competitively prejudiced as a result of these improper discussions.

**A. USACE Conducted Inadequate Discussions Regarding the Automated Debris Management System**

21. An important element of the Solicitation was the requirement to provide a price proposal for an Automated Debris Management System ("ADMS"), which would allow for electronic tracking of debris loads in the field and eliminate the need for paper load tickets.

22. The Corps encountered significant problems in developing an accurate Independent Government Estimate ("IGE") for ADMS and properly assessing the ADMS pricing. Consequently, the Corps determined that, in order to reach a full and proper understanding of ADMS pricing, as well as to determine the parameters of realistic ADMS use in the future, further discussions would be required with all offerors.

23. For example, based on its comparison of the ADMS pricing among the offerors in the competitive range, the Corps noted, in bold print [redacted]

[redacted]

24. The Corps further noted: [redacted]

25. The Defense Contract Audit Agency ("DCAA") voiced similar concerns in its March 10, 2008, memorandum: [redacted]

26. Even as late as March 21, 2008, the Corps stated in its source selection documents: [redacted]

27. Despite the Corps' repeated acknowledgment that the ADMS evaluation criteria were seriously flawed and mandated additional discussions with all offerors, such discussions never took place.

28. The Corps' failure to hold such additional discussions had a direct adverse impact on AshBritt's evaluation. At AshBritt's initial pre-award debriefing and again during the protest proceedings at GAO, the Contracting Officer cited AshBritt's ADMS pricing as a basis for its non-selection. (Statement of Contracting Officer in B-310442.3 at 24).

### B. USACE Treated Offerors Unequally When Discussing ADMS Pricing

29. The Solicitation requires that all contract line item prices in the offeror's proposals be "fully burdened with indirect costs and profit." Solicitation at 4. AshBritt complied with this Solicitation requirement, but the source selection materials reveal that certain other offerors did not burden their ADMS price proposal at all.

30. In fact, the Corps *advised* at least one offeror to violate the Solicitation by unburdening its ADMS price. The Corps' discussion notes with respect to [redacted] state: [redacted] The Corps did not provide similar advice to AshBritt.

31. The FAR prohibits a procuring agency from engaging in conduct that favors one offeror over another. FAR 15.306(e)(1). By encouraging at least one offeror, but not AshBritt, to fail to burden its ADMS vendor price – in clear violation of the Solicitation – the USACE's discussions clearly favored one offeror at the expense of another.

### C. Failure to Conduct Meaningful Discussions Led to an Improper Evaluation of AshBritt's Small Business Subcontracting Plan

32. AshBritt's Final Proposal Revision received a final rating of [redacted] for Factor 3 – Small Business Subcontracting Plan.

33. This was the only instance in which AshBritt did not receive [redacted] technical rating.

34. During its discussions with the Corps on August 31, 2008, the Corps informed AshBritt that its initial subcontracting plan was deficient in two respects: it failed to (1)

specifically identify subcontractors in sufficient detail, and (2) incorporate a method for using local subcontractors.

35. AshBritt addressed the Corps' stated concerns by providing a lengthy list of individuals, including local subcontractors, available to perform subcontracting work. AshBritt thus adequately addressed the Corps' two stated concerns raised during discussions.

36. However, the Corps marked AshBritt down on its subcontracting plan based upon two other alleged deficiencies of which it did not inform AshBritt: (1) that AshBritt failed to specify the type of work that each subcontractor, now specifically identified, would perform; and (2) AshBritt's score on the AFARS Appendix DD checklist, the "Subcontracting Plan Evaluation Guide."

37. The Corps never raised these issues with AshBritt during any discussions or otherwise. Accordingly, the Corps violated the requirement in FAR 15.306(d)(3) to inform offerors of any deficiencies in their proposals. The Corps acted in violation of statute and regulation by only selectively identifying certain subcontracting plan deficiencies during discussions and then downgrading AshBritt based on additional deficiencies about which it remained silent.

**D. The Corps Advised AshBritt to Change its Prices Based upon a Flawed IGE that the Corps Knew was Inaccurate and Subsequently Altered.**

38. On August 20, 2007, the Defense Contract Audit Agency submitted a memorandum to the Corps, to the attention of Timothy Black, which advised: [redacted] The Audit Agency [redacted] (DCAA Letter Report at 2, 20 August 2007).

39. This IGE, which was prepared on July 23, 2007, was approximately [redacted] than the average of the responsible offerors' initial price proposals in each region. (Independent Government Estimate, 23 July 2007).

40. Nonetheless, on August 31, 2007, without having yet revised its IGE, the Corps conducted discussions with AshBritt based upon the outdated and flawed IGE. The Corps advised AshBritt that its prices were too [redacted] in several areas in comparison to the IGE. In particular, despite knowledge that the IGE was in need of further analysis, the Corps advised AshBritt to [redacted] (Discussion Agenda for AshBritt, Inc. at 2, 31 August 2007; Written Summary of Oral Discussions with all Offerors in the Competitive Range at 4, 31 August 2007).

41. On September 10, 2007, AshBritt submitted its FPR and, relying on its discussions with the Corps, [redacted] in accordance with the Corps' advice.

42. The IGE was revised several times thereafter, including on September 12, 2007 and March 21, 2008, but the Corps failed to provide AshBritt with new discussions based upon the revised IGE, or even to advise AshBritt of these subsequent changes.

43. Advising AshBritt that it should modify its price in relation to an IGE that the Corps knew was unreliable constitutes a material discussion flaw.

44. Where a procuring agency chooses to conduct discussions based on an IGE, it is impermissible for the agency to later abandon that IGE in favor of competitively-based pricing without providing an opportunity for offerors to revise their prices accordingly.

45. The Corps' failure to provide such an opportunity renders the discussions they held with AshBritt misleading and meaningless. This constitutes a material discussion flaw.

46. Where there has been a material discussion flaw, it is improper to speculate regarding the changes that might have been made to prices in the absence of that flaw. Rather, the remedy is to reopen negotiations, conduct meaningful discussions, request new pricing, and make evaluations based on revised proposals.

**COUNT II**

**(Failure to Ensure Offers Conformed to Solicitation Requirements)**

47. AshBritt incorporates paragraphs 1 through 46 as if fully stated herein.

48. The Solicitation required offerors to provide Schedule B prices "fully burdened with indirect cost and profit." Solicitation at 4.

49. At least [redacted] offerors in the competitive range used the same vendor as AshBritt -- [redacted] -- as supplier of the [redacted] system to fulfill the ADMS requirement. [redacted] provided all [redacted] offerors with the identical vendor cost for the ADMS system [redacted]

50. At least [redacted] offerors – [redacted] – failed to burden their ADMS price proposal with either indirect cost or profit. Rather, in contradiction of the express terms of the Solicitation, they listed their ADMS price proposals at the same value as the vendor costs -- [redacted] (Statement of Contracting Officer in B-310442.3 at 25).

51. Upon information and belief, it is likely that these and other offerors also failed to burden other contract line items in Schedule B in addition to failing to burden the ADMS line items.

52. An Agency is required to evaluate proposals based solely on the criteria specified in the Solicitation. FAR § 15.305(a) and 10 U.S.C. § 2305(b)(1) (1999). The Corps failed to do so in violation of statutory and regulatory requirements by awarding contracts to [redacted] offerors that

failed to abide by the Solicitation requirement to fully burden their price proposals. This failure to enforce the terms of the Solicitation harmed AshBritt, which did comply with the Solicitation requirements, by rendering AshBritt's price proposal higher than those of the other offerors.

**COUNT III**

**(Failure to Follow the Evaluation Scheme Described in the Solicitation Regarding Reach Back Contracts in Violation of Statute and Regulation)**

53. AshBritt incorporates paragraphs 1 through 52 as if fully stated herein.

54. The Solicitation provides for the selection of "reach back" contractors, whose ACI Contracts will be activated only during major disasters generating debris levels above a designated threshold. The selected reach back contractors must be located outside of the impacted region.

55. The Solicitation states that "[s]election of reach back firms for every region will be based on how an offeror's proposal fared in the evaluation for that region and if the offeror expressed interest in the program. The determining factor is that the offeror will have to receive an award in another region. Further, the offeror will have to win in a non-adjacent region." (RFP at 109).

56. Section M.5 of the Solicitation states that the following factors will be used to evaluate offerors' proposals:

FACTOR 1 – PAST PERFORMANCE
FACTOR 2 – MANAGEMENT /OPERATIONS PLAN
FACTOR 3 – SMALL BUSINESS SUBCONTRACTING PLAN
FACTOR 4 – TECHNICAL APPROACH TO SAMPLE TASK ORDER
FACTOR 5 – PRICE

(RFP at 110-11).

57. Thus, according to the Solicitation, reach back contracts were to be awarded based on those same five evaluation criteria, including Factor 5, Price.

58. However, the Source Selection Decision Documents for this procurement, both before and after corrective action was taken, indicate that the Corps failed to adhere to these stated evaluation factors in selecting reach back contractors.

59. For example, the Source Selection Decision Document dated January 24, 2008 states: [redacted] (Source Selection Decision Document at 19, 24 January 2008, emphasis added).

60. The Source Selection Decision Document (after corrective action) dated April 8, 2008 includes the identical statement. (Source Selection Decision Document (after corrective action at 18, 8 April 2008).

61. Consequently, contrary to the clear mandate in the Solicitation, the Corps failed to apply the price factor in selecting reach back contractors.

62. AshBritt was neither notified of this deviation nor given the opportunity to submit a revised offer in light of this change.

63. This decision to select reach back contractors purely on the basis of technical evaluation factors is a clear departure from the Solicitation's stated evaluation factors, in violation of FAR §§ 15.305(a) and 15.608.

**BASIS FOR DECLARATORY AND INJUNCTIVE RELIEF**

64. As a result of the Corps' unlawful actions, AshBritt will suffer irreparable injury for which it has no adequate legal remedy. As described in Counts I through III above, the Corps' prejudicial errors in administering this procurement were arbitrary and capricious, lacked a reasonable basis, and violated statute and regulation.

65. The relief requested by AshBritt will not injure the Corps and will serve the public interest by insuring that the procurement is conducted pursuant to statute and regulation. The Corps' violations of federal procurement statutes, regulations and policies adversely affect and undermine the integrity of the federal procurement process. The relief requested by AshBritt will insure that the Corps protects the public interest by preserving the integrity of the system and public confidence in the federal procurement process, thereby promoting competition for federal government contracts.

66. AshBritt is fully qualified to perform under the contract award pursuant to the solicitation.

67. This Court should provide AshBritt effective relief by declaring that the Corps violated both statutes and regulations in its evaluation of AshBritt's proposal and other proposals included in the competitive range, and by failing to award more contracts under the referenced Solicitation to AshBritt.

**PRAYER FOR RELIEF**

WHEREFORE, AshBritt, Inc. prays that this Court grant the following relief:

a. Declare pursuant to 28 U.S.C. §§ 1491(b)(2) that the Corps is required to reopen discussions and request new Final Proposal Revisions from offerors in the competitive range.

b. Alternatively, require the Corps to award additional contracts under the Solicitation to AshBritt, Inc.

c. Permanently enjoin the Corps from proceeding with the administration of the awarded contracts.

d. Grant such other and further relief, including the award of attorneys' fees, court costs, and bid preparation costs as the Court may deem just and proper.

Respectfully submitted,

David J. Taylor
SPRIGGS & HOLLINGSWORTH
1350 I Street, N.W.
Washington, D.C. 20005
Ph: (202) 898-5800
Fx: (202) 682-1639

Mr. Taylor's Direct Dial
(202) 898-5838

davidtaylor@spriggs.com

*Counsel of Record for Plaintiff*
*AshBritt, Inc.*

June 30, 2008

OF COUNSEL:

William J. Spriggs
Stephen A. Klein
Katherine A. Allen
Rachel W. McGuane
Amanda L. Edwards
SPRIGGS & HOLLINGSWORTH