IN THE UNITED STATES COURT OF FEDERAL CLAIMS
*Bid Protest*

| | | |
|---|---|---|
| ASHBRITT, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 08-00473 |
| | ) | Judge Williams |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY TO GOVERNMENT RESPONSE TO MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD**

COMES NOW Plaintiff, AshBritt, Inc. ("AshBritt"), and, files this Reply to the Government's July 31, 2008 Response to AshBritt's Motion to Supplement the Administrative Record. With respect to the issues raised by the Government's response, AshBritt respectfully avers as follows:

**I. The Government Should Be Required to Produce the Technical Proposals Relating to Subcontracting for All Offerors within the Competitive Range**

a. The Government and Intervenor Ceres both contend that AshBritt never requested and the Court never ordered the production of technical proposals, relating to subcontracting plans. To the contrary, our recollection is that these documents were specifically requested by AshBritt and their production was specifically ordered by the Court. AshBritt conceded at the initial status conference that it had no need for the entire technical proposals, but that it sought only that portion relevant to its claim, *i.e.*, the section that pertains to the subcontracting plan. If AshBritt was unclear about

its request, AshBritt hereby offers clarification and requests that these documents now be produced.

b. The subcontracting plans of AshBritt's competitors are not only relevant, but also are necessary, for AshBritt to compare its marked-down proposal to the higher-rated plans, to determine whether the Government scored the proposals in a fair, even-handed, and consistent manner.

c. Without the subcontracting plans themselves, the evaluations of these plans, which the Government concedes AshBritt needs, are of little use. AshBritt cannot analyze the evaluations, which the Government has produced, without access to the information being evaluated. AshBritt cannot make a valid comparison of the evaluations, without knowing the basis on which they were made.

d. To understand whether the discussions that the Corps had with AshBritt regarding its subcontracting plans were meaningful, or whether they were inadequate, misleading or unequal, AshBritt must be able to compare and review all relevant information pertaining to how the Corps acted towards its competitors in this regard. (Intervenor Ceres' contention that an allegation of unequal and misleading discussions does not implicate the proposals of the offerors other than AshBritt is clearly erroneous.)

**II. The Government Should Be Required to Produce All Interim IGEs as well as All Background/Supporting Documentation for the Various IGEs.**

a. The Government concedes that it will supplement the Administrative Record "[t]o the extend that the agency discovers materials relevant to the IGEs which were not already provided", "if such materials exist."

b. Notably, however, the Government misstates that AshBritt has acknowledged receipt of an IGE dated September 12, 2007. As stated in AshBritt's Motion to Supplement,

AshBritt has received the initial IGE dated July 23, 2007 and the final IGE dated March 21, 2008, but has not received any of the interim IGEs. Contrary to acknowledging its receipt, AshBritt references the September 12, 2007 as an example of an IGE which AshBritt has not received, but which the Corps' source selection materials indicate exists.

c. AshBritt requires all interim IGEs, as well as all backup information pertaining to the IGEs, in order to obtain a full understanding of how the IGE, upon which AshBritt was advised to change its prices was ultimately used, abandoned and/or modified.

d. Intervenor Cere's contention that AshBritt has not claimed that the advice given to AshBritt during discussions, regarding the initial IGE, was flawed or inaccurate is blatantly erroneous. Indeed, in AshBritt's complaint, AshBritt states: "the Corps conducted discussions with AshBritt based upon the outdated and flawed IGE."

    i. Further, AshBritt alleges that the Corps knew its IGE was in need of further analysis, that AshBritt was advised to raise its prices in relation to the IGE, despite the fact that the IGE was significantly higher than average prices, and that the Corps later revised and ultimately abandoned the initial IGE, in contravention of its advice to AshBritt.

e. Likewise, Intervenor Cere's contention that AshBritt has failed to allege that events subsequent to the August 31 discussions, such as IGE revisions, render advice not meaningful, inadequate, or misleading is also blatantly erroneous. Indeed, in AshBritt's complaint, AshBritt states: "Where a procuring agency chooses to conduct discussions based on an IGE, it is impermissible for the agency to later abandon that

IGE in favor of competitively-based pricing without providing an opportunity for offerors to revise their prices according."

i. *See, e.g., Dyneteria, Inc.*, B-181707, 75-1 CPD ¶ 86, Feb. 7, 1975 (finding prejudice where offerors were not apprised that "the government no longer had much faith in its own estimate").

ii. *See also Ranor, Inc.*, B-255904, 94-1 CPD ¶ 258, Apr. 11, 1994 ("[A]lthough the agency had repeatedly advised Ranor that its price was too low based upon a comparison with the government estimate, the agency, in its award decision, abandoned its earlier concern about price in relationship to the government estimate and made award to an offeror whose price approximated the protester's (and Offeror A's) previously offered prices. Given the actual basis for the award [comparison with the other offers received], the agency's advice . . . was misleading.")

**III. The Government Should Be Required to Produce Clear, Legible Copies of All the Documents in the Administrative Record.**

a. Pages 57, 382, 386, 387, 388, 389, 402, 403, 493, 494, 497, 498, 506, 508, 512, 514, 515, 516, 518, 519, 520, 522, 565, 569, 570, 571, 572, 574, 575, 593, 594, 598, 599, 612, 614, 617, 619, 620, 621, 623, 624, 625, 630, 631, 633, 634, 642, 644, 651, 657, 659, 667, 675, 677, 682, 684, 691, 695, 701, 704, 705, 707, 709, 710, 712, 748, 750, 754, 764, 765, 766, 768, 776, 792, 798, 799, 804, 809, 813, and 814 are illegible.

i. These page numbers correspond to the source selection documents, i.e., evaluations, decisions and plans, (Tab 44, 9, 20, 21, 28, 31, 33, 35, 36) and debriefing documents (Tabs 13, 34, and 46-49), as well as to the Statement of the CO Submitted to the GAO (Tab 2), the Competitive Range Memo (Tab

12), the Notification of Non-selection (Tab 22), and price comparison for all proposals (Tab 29).

b. The problem of illegibility appears to be due to the fact that the original documents were in color and the Administrative Record, as produced, is in black-and-white. As produced, several sections of these documents are entirely grayed out. Because color is used in many of these documents to provide substantive information, the documents become unintelligible when printed in black-and-white.

c. Thus, while the Government agrees to provide Xerox copies of specifically identified pages from the original AR, AshBritt would note that to properly rectify this problem, these documents will need to be produced in color. In addition, for the sake of continuity, rather than reproducing individual pages, the Government may instead wish to reproduce each Tab that contains such pages.

## IV. The Government Should Be Required to Provide Further Clarity to the Administrative Record, Specifically as Pertains to the Identification of the Schedule Bs.

a. As produced, the Administrative Record lacks sufficient labeling to ensure that documents are properly identified.

  i. While the Government has now informed the Court that the documents it has produced are in a logical succession, from which it can be deduced which documents were which, for AshBritt, or this Court, to have make such deductions would have required AshBritt to assume to much.

  ii. For instance, although "the region [for which pricing is offered] is indicated on pages designated '8 of 111,'" this information is not found in the logical

place of a heading or at the beginning of a series of documents, but falls hidden in between.

iii. Further, this information applies only to the particular initial price proposal on which it is found, and not to the final price proposal placed either before of after it in the stack.

iv. Moreover, in several places throughout the Administrative Record, it is clear that the documents have been placed out of order. *See, e.g.,* Tab 50 around page 816 and Tab 54 around page 1031. While such errors are no doubt inadvertent and are of no real consequence to the integrity of the production, they serve to highlight the need for proper labeling and the danger of making assumptions based solely on the order of the production.

v. It is for this reason that the Government should be required to provide labels or an index with identifying information, such as the region for which the schedule was offered, to the extent it is not observable from the face of the document.

b. In follow-up to its Response to AshBritt's Motion to Supplement the Administrative Record, the Government has provided information in an e-mail, which uses page numbers to identify documents. This information affords much clarity to the Administrative Record and we understand was provided to the Court at our suggestion.

i. Because of the way that the Record was produced, it is not intuitive which pages should go under which Tabs.

ii. To provide such clarity, AshBritt proposes that the Index be modified to contain page numbers.

c. The information provided in the Government's Reponse alone does not provide sufficient clarity. Indeed, the Government erroneously identifies the contents of Tabs 53, 54, 55, and 56 therein. Contrary to the Government's statements, Tab 53 contains the proposals of ECC; Tab 54 contains the proposals of P&J; Tab 55 contains the proposals of Xperts, and Tab 56 contains SSEB evaluations.

For the foregoing reasons, AshBritt respectfully requests this Court compel the Government to supplement the Administrative Record as set forth in Plaintiff's Motion to Supplement the Administrative Record.

Dated: August 4, 2008

Respectfully submitted,

/s/ David J. Taylor
SPRIGGS & HOLLINGSWORTH
1350 I Street, NW, Ninth Floor
Washington, D.C. 20005
Ph: (202) 898-5800
Fax: (202) 682-1639

Mr. Taylor's Direct Dial
(202) 898-5838

davidtaylor@spriggs.com

*Counsel of Record for Plaintiff*
*AshBritt, Inc.*

OF COUNSEL:

William J. Spriggs
Stephen A. Klein
Katherine A. Allen
Rachel W. McGuane
Amanda L. Edwards
SPRIGGS & HOLLINGSWORTH

**CERTIFICATE OF FILING**

I hereby certify that on the 4th day of August, 2008, a copy of the foregoing "Plaintiff's Reply to Government Response to Motion to Supplement the Administrative Record" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ David J. Taylor